IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2006

## STEPHEN E. MILES v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR105-2004    William B. Acree, Jr., Judge**

---

**No. W2005-01465-CCA-R3-PC  - Filed May 16, 2006**

---

The petitioner, Stephen E. Miles, appeals the Weakley County Circuit Court's denial of his petition for post-conviction relief from his guilty pleas to six counts of aggravated robbery, one count of theft of property greater than ten thousand dollars but less than sixty thousand dollars, and the resulting effective sentence of eighteen years in confinement.  He contends (1) that he received the ineffective assistance of trial counsel; (2) that his guilty pleas were involuntary; (3) that the State failed to turn over evidence to the defense as required by Rule 16, Tennessee Rules of Criminal Procedure; and (4) that his confession to police was involuntary.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Jeffery T. Washburn, Dresden, Tennessee, for the appellant, Stephen E. Miles.

Paul G. Summers, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; and Thomas A. Thomas, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

At the petitioner's guilty plea hearing, the State presented the following factual account of the crimes: On February 17, 2003, the petitioner and one or two armed accomplices broke into Billy Ray and Fay Butts' home.  They tied up Fay Butts, the couple's daughter, and their grandson and began looking through the house for money.  When Billy Ray Butts arrived home, the robbers forced him to open a safe.  The robbers stole cash and Fay Butts' 2001 Pontiac Grand Am, which was later found destroyed.  On March 5, 2003, the petitioner and an accomplice went into the American

Legion in Martin, Tennessee and waited until the business closed. When the manager walked through the building, the men grabbed her and tied her up. They also tied up several patrons who were still in the building and robbed everyone at gunpoint.

The petitioner pled guilty to six counts of aggravated robbery, a Class B felony, and one count of theft of property valued more than ten thousand dollars but less than sixty thousand dollars, a Class C felony. The trial court sentenced him as a Range II, multiple offender to concurrent sentences of eighteen years for each aggravated robbery conviction and six years for the theft conviction. Subsequently, the petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel, that his guilty pleas were involuntary, that the State failed to disclose favorable evidence to the defense, and that his confession to police was involuntary. The post-conviction court appointed counsel, and counsel amended the petition.

At the evidentiary hearing, the petitioner's trial attorney testified that he worked for the Twenty-Seventh Judicial District Public Defender's Office. He said that the public defender's office was "pressed for time" and that he handled about ten cases per week. Counsel did not remember how many times he met with the petitioner, but he talked with petitioner on the telephone "every now and then," and his case notes reflected that he talked with the petitioner at least five times. Counsel also talked with Jenny Caveness and Mary Tidwell, who was the petitioner's fiancé at the time. Counsel interviewed several law enforcement officers involved in the case, including Samuel Liles and Joe Walker, who recorded the petitioner's confession. The petitioner had given the officers an extensive confession in which he admitted committing the crimes and alluded that other people were involved. The petitioner told counsel that the officers had coerced him into confessing. Counsel questioned Liles and Walker about the circumstances surrounding the petitioner's confession, but they denied any coercion. Counsel filed a motion to suppress the confession, but the trial court denied the motion after a suppression hearing. At that point, the defense's options became limited. The petitioner had an extensive criminal record, and counsel told the petitioner that he was not confident about winning the case. Counsel did not know if he told the petitioner what the definitive outcome of a trial would be and did not know if he told the petitioner the case was "hopeless." Counsel stated that he did not tell the petitioner the trial court would sentence him to two consecutive twenty-year sentences if convicted but may have told the petitioner that he would receive two fifteen-year sentences.

Counsel testified that Raymond Ward had secretly audiotaped conversations with the petitioner while the two of them were inmates in the Weakley County Jail, that he did not interview Ward, and that Ward had no credibility. Counsel's notes did not reflect that he listened to Ward's audiotapes, and counsel never filed any motions claiming that the tapes violated the petitioner's right to remain silent or his right to counsel. Counsel also did not interview any victims. However, counsel stated that he would have interviewed victims and would have filed a motion to suppress Ward's audiotapes if the case had gone to trial. Counsel had been in ongoing negotiations with the State, and the State originally offered to let the petitioner plead guilty in return for a thirty-year sentence as a career offender. Later, the State offered to let the petitioner plead guilty in return for an eighteen-year sentence. About one week after the petitioner's suppression hearing, the petitioner

accepted the State's offer. During that one-week time period, counsel met with the petitioner twice. He also met with the petitioner on November 6, 2003, the day of the petitioner's guilty plea hearing. Counsel stated that "we were constrained in our time frame" because the trial court would not accept the petitioner's pleas after November 6. Before the guilty plea hearing, counsel talked with the petitioner about his options and answered the petitioner's questions. Counsel did not know whether he explained every constitutional right to the petitioner before the hearing, but the petitioner probably signed a guilty plea form, and the trial court advised the petitioner about his rights during the hearing.

Joe Terry, an investigator for the public defender's office, testified that he talked with the petitioner while the petitioner was in jail and that the petitioner claimed Investigator Sammy Liles coerced him into confessing by threatening to take the petitioner's fiancé and children away from him. Terry said that the petitioner's confession "was about the most thorough confession I've ever read in my life" and that he did not know of anything else to do in the case. Terry interviewed officers involved with the case but did not investigate the petitioner's claim that his confession was coerced. Terry also did not interview jail inmate Raymond Ward and did not listen to Ward's audiotapes.

The petitioner testified that his attorney did not ask many questions during the suppression hearing and did not call the witnesses that the petitioner had requested. The petitioner's fiancé and another witness could have testified that the petitioner's confession was coerced, but trial counsel did not call them to the stand. Some of the State's witnesses testified at the suppression hearing that they had audiotaped the petitioner's confession, but the witnesses never produced the audiotape. The petitioner also never got to hear Raymond Ward's audiotapes, and the State never turned over the tapes to the defense. Counsel never told the petitioner that he had listened to any audiotapes or interviewed Ward. After the trial court denied the petitioner's motion to suppress, counsel told the petitioner that he was not confident about the petitioner's case, that the petitioner had no chance of being acquitted, and that the petitioner would probably receive two consecutive twenty-year sentences.

The petitioner testified that fellow jail inmate Raymond Ward secretly wore a wire and audiotaped some of his conversations with the petitioner. The police coerced the petitioner into confessing by telling him about Ward's audiotapes, by threatening to put his fiancé in jail, and by threatening to give his children to Child Protective Services. Before the petitioner confessed, the police officers told him to sign a waiver of rights form but did not read the form to him. The officers did not tell the petitioner that he had a right to an attorney, and the petitioner did not ask for an attorney because he had nothing to say to the police. On the day of his guilty plea hearing, the petitioner had only thirty minutes to accept the State's plea offer, which was not enough time to make a decision. He said that he had pled guilty in earlier cases because he was guilty and that he did not confess to Raymond Ward that he committed the crimes in the instant case.

In its written order denying post-conviction relief, the post-conviction court held that the petitioner voluntarily pled guilty, noting that the petitioner was a "seasoned criminal" who

understood the criminal process and that the guilty plea hearing transcript demonstrated the petitioner fully understood his pleas. Regarding the petitioner's claim of ineffective assistance of counsel, the post-conviction court stated that the record reflected that counsel had performed in a highly competent manner and had thoroughly prepared the case. As to the petitioner's claim that the State failed to provide the defense with Raymond Ward's audiotapes, the court concluded that the issue had been waived and that the petitioner failed to demonstrate that Ward's audiotapes were favorable to the defense. Finally, as to the petitioner's claim that his confession was coerced, the court determined that the issue had been previously determined and, therefore, waived. In any event, the court stated that it had reviewed the suppression hearing transcript and that there was no merit to the petitioner's claim.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A. Ineffective Assistance of Counsel

The petitioner claims that he received the ineffective assistance of counsel because his trial attorney failed to investigate his case properly, failed to interview witnesses, failed to investigate the circumstances surrounding his confession, failed to call witnesses at the suppression hearing, and failed to review the audiotapes made by Raymond Ward. The State contends that the post-conviction court properly concluded that the petitioner failed to show he received the ineffective assistance of counsel. We agree with the State.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id. "To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of

competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

The petitioner claims that he received the ineffective assistance of counsel because his attorney failed to investigate his case and the circumstances surrounding his confession. However, the post-conviction court obviously accredited counsel's testimony over that of the petitioner. Counsel testified that he met with the petitioner several times; spoke with witness Jenny Caveness and the petitioner's fiancé; interviewed several police officers, including the officers who recorded the petitioner's confession; and filed a motion to suppress the confession. The petitioner has failed to specify what further investigation counsel should have done. The petitioner also claims that he received the ineffective assistance of counsel because his attorney failed to interview witnesses and failed to call witnesses to testify at his suppression hearing. However, the petitioner did not present any of these witnesses at the evidentiary hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We cannot speculate as to what benefit any further witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Therefore, the petitioner has failed to demonstrate prejudice. As to the petitioner's claim that his attorney failed to review the audiotapes made by Raymond Ward, the tapes are not in the record before us and the petitioner has failed to demonstrate how his attorney's review of the tapes would have changed the outcome of his case. Therefore, he again has failed to demonstrate prejudice. The post-conviction court properly concluded that the petitioner did not receive the ineffective assistance of counsel.

## B. Involuntary Guilty Plea

When a defendant enters a guilty plea, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

The petitioner contends that his guilty pleas were involuntary because trial counsel failed to inform him about his constitutional rights before the guilty plea hearing and because he only had thirty minutes to accept the State's plea offer, which was not enough time to make an informed decision and review all other options. However, the post-conviction court reviewed the guilty plea hearing transcript and concluded that it demonstrated the petitioner fully understood his pleas. We also have reviewed the transcript and agree with the post-conviction court. At the guilty plea

hearing, the trial court informed the petitioner that he was a Range II, multiple offender and was facing a twelve- to twenty-year sentence for each aggravated robbery conviction and a six- to ten-year sentence for the theft conviction. The trial court asked the petitioner if he understood the potential punishments, and the petitioner said yes. The trial court then informed the petitioner about his constitutional rights, including his right to plead not guilty, his right to a jury trial, and his right to cross-examine witnesses. The court asked the petitioner if he wanted to plead guilty, if he was pleading guilty voluntarily, and if his attorney had advised him about the plea. The petitioner again said yes. The trial court then asked the petitioner if he had any questions, and the petitioner said no. We agree with the post-conviction court that the guilty plea hearing transcript demonstrates that the petitioner pled guilty voluntarily.

## C. Ward's Audiotapes

Next, the petitioner claims that he is entitled to post-conviction relief because the State failed to turn over Raymond Ward's audiotapes to the defense in violation of Tennessee Rule of Criminal Procedure 16, the discovery rule. However, the petitioner is not entitled to relief.

"Relief under [the Post-Conviction Procedure Act] shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. However, because a violation of Tennessee Rule of Criminal Procedure 16 does not raise a constitutional issue, it cannot be used as a basis for granting post-conviction relief. Nevertheless, any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). Unlike Rule 16 violations, Brady violations may be a valid basis for post-conviction relief. In order to prove a due process violation under Brady, a petitioner must show that (1) he requested the allegedly withheld information, (2) the State suppressed the information, (3) the information was favorable to the accused, and (4) the information was material. Id.; State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). Nothing in the record demonstrates that the defense requested Ward's tapes or that the State suppressed them. The tapes are not in the record before us, and the petitioner has not shown that the tapes were favorable or material to his case. Thus, the petitioner has not satisfied any of the four requirements and is not entitled to post-conviction relief.

## D. Involuntary Confession

Finally, the petitioner claims that his confession was involuntary. In effect, he is arguing that the trial court erred by denying his motion to suppress. However, a "plea of guilty, which is entered voluntarily, knowingly, and intelligently, waives all prior non-jurisdictional, procedural, and constitutional defects in the proceedings." State v. McKissack, 917 S.W.2d 714, 716 (Tenn. Crim. App. 1995). As discussed above, nothing in the record supports a conclusion that the petitioner did not voluntarily and knowingly enter his guilty pleas. Therefore, we agree with the post-conviction court that the petitioner has waived this issue.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE